



*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>HELEN B. TIRBEN,<br><br>      Debtor(s). | Case No. 10-29356-E-13L |
| HELEN B. TIRBEN,<br><br>      Plaintiff(s),<br>v.<br><br>RAYMOND SIGNORELLO; NORTHERN EMPIRE, LLC; FUSE WINES, LP; LIFE INVESTORS INSURANCE COMPANY OF AMERICA; and FUSE WINES, LLC,<br><br>      Defendant(s). | Adv. Pro. No. 10-2299 |

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.

## MEMORANDUM OPINION AND DECISION

The Motion for Summary Judgment was properly set for hearing on the notice required by Local Bankruptcy Rule 9014-1(f)(1). Oral argument was presented by the parties at the scheduled hearing.

## BACKGROUND

The Signorello Parties allege that between April 2005 and

September 2009, Sakir Ilker Tirben, Debtor-Plaintiff's husband and a Signorello employee, stole in excess of $500,000.00 from the Signorello parties. The Signorello parties further allege that some of the stolen money was used to pay the premiums on Mr. Tirben's life insurance policies.

The Signorello Parties are involved in the wine business. On April 15, 2005, the Signorello Parties hired Mr. Tirben as Controller. As Controller, Mr. Tirben was in charge of accounts and accounting. By September 15, 2009, Mr. Tirben was no longer employed by the Signorello Parties. The Signorello Parties allege that Mr. Tirben stole more than $500,000.00 during his employment, some of which was used to pay premiums on two life insurance policies. Mrs. Tirben admits that some of the money was deposited into her and her husband's joint bank account, but alleges that the money was all used as Mr. Signorello directed.

Several months after Mr. Tirben's employment ended, law enforcement began investigating the alleged theft. When the Napa County Sheriff's Department attempted to execute a search warrant on Mr. Tirben's house, Mr. Tirben committed suicide. This triggered a $500,000.00 life insurance payout. The Signorello Parties then sued Mrs. Tirben in Napa County Superior Court. Subsequently, Mrs. Tirben sought protection under Chapter 13 of the Bankruptcy Code and filed this action seeking turnover of $500,000.00 in life insurance proceeds.

The Signorello Parties filed a counterclaim alleging (1) a claim against Mrs. Tirben for the funds allegedly stolen by her late husband, (2) that the debt is nondischargeable, and (3) seeking imposition of a constrictive trust for the benefit of

the Signorello Parties on assets purchased, repaired, or improved with the allegedly stolen funds.

The life insurance company interpled the life insurance proceeds and was dismissed from the adversary proceeding. The court also consolidated the Signorello Parties' objection to Mrs. Tirben's claimed exemptions and Chapter 13 Plan with this adversary proceeding. This Summary Judgment Motion followed.

The debtor filed opposition on March 4, 2011. Opposition was due March 3, 2011. Despite the fact that Mrs. Tirben's opposition was untimely, in the interest of justice the court will consider it.

## SUMMARY JUDGMENT

A motion for summary judgment is governed by Federal Rule of Civil Procedure 56 as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056. Summary judgment is granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. When looking at a summary judgment motion, "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Signorello Parties contend that since Mrs. Tirben's opposition contains no legal authority and fails to rebut the legal arguments of the Signorello Parties, Mrs. Tirben has conceded all of the Signorello Parties' legal arguments. However, this is not the law. A party seeking summary judgment must show (1) the apparent absence of any genuine dispute of material fact and (2) movant's entitlement to judgment as a matter of law on the

basis of the undisputed facts. 11 JAMES WM. MOORE, FEDERAL PRACTICE § 56.13[1] (3rd ed. 2010). If the movant fails to show that he or she is entitled to judgment as a matter of law based on the undisputed facts, it is irrelevant what the nonmovant does or does not do: the movant is not entitled to summary judgment. *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990).

The Signorello Parties' Motion for Summary Judgement also requests a constructive trust be imposed on the $500,000.00 of life insurance proceeds for their benefit. In the alternative, the Signorello Parties request summary adjudication or partial summary judgment on such evidentiary issues as may be proper.

**Mrs. Tirben's Liability for Her Husband's Theft**

In their earlier documents, the Signorello Parties seemed to allege that Mrs. Tirben and her husband, Mr. Tirben, conspired to get Mr. Tirben hired as Controller so that he could steal from the Signorello Parties (Answer at ¶ 23). However, this is not alleged in the Summary Judgment Motion. Instead, the Signorello Parties allege that Mrs. Tirben had constructive knowledge of Mr. Tirben's theft and that she received some benefit from it. As such, the Signorello Parties believe that Mrs. Tirben should be liable for the entire $500,000.00 allegedly stolen.

The parties go into great detail about the Tirbens' finances. The Signorello Parties argue that the Tirbens spent more money each month than they earned. As such, the Signorello Parties allege that Mrs. Tirben knew or should have known Mr. Tirben was stealing

to supplement his income.[1] Mrs. Tirben contends that she and her husband didn't spend as much as the Signorello Parties claim. Also, Mrs. Tirben contends that their income was supplemented by other means, such as gifts from family members and winning shooting competitions.

However, the Signorello Parties do not assert any authority as to how or why Mrs. Tirben is personally liable for the obligations owed by her husband for his alleged illegal acts. Rather, this contention is merely stated in a heading on page 9 of the Points and Authorities as, "There Is No Triable Issue of Material Fact That Helen Owes The Signorello Parties Over $500,000." The Signorello Parties just boldly state that since they assert that Mr. Tirben stole money and used the money for his and Mrs. Tirben's benefit (spending more money than he would otherwise legally make), liability is imposed. Given that the Signorello Parties could not cite any authority for this "guilt by association" theory, the court infers that they could find no legal theory for this proposition. Based on the evidence submitted and legal theories advanced, the Signorello Parties have failed to establish a claim for personal liability against Mrs. Tirben for the alleged criminal conduct of Mr. Tirben. As such, the Signorello Parties are not entitled to summary judgment on this issue. Correspondingly, as the Signorello Parties have not proven any personal liability, they are not entitled to summary judgment on the issue of the nonexistent debt being nondischargeable pursuant to 11 U.S.C.

---

[1] The Signorello Parties rely on the declaration of Michelle Kenyon, a paralegal, to provide their accounting estimates of the Tirbens' earnings and spending.

§ 523.

The claim for nondischargeability of the alleged debt appears to be based on this guilt by association theory. All of the alleged improper conduct was that of Mr. Tirben, not Mrs. Tirben. The Signorello Parties advance their theory based on several bankruptcy court cases, none of which arise under the community property laws of the State of California. The first case cited for the associated guilt proposition is *In re Smith*, 98 B.R. 423, 427 (Bankr. C.D. Ill. 1989). An initial review of the *Smith* case discloses that the debt at issue related to a business owned and operated by the debtor and her husband. The debtor was the licensee of a car dealership, and her husband diverted monies which should have been properly paid to a lien holder on a car sold by the dealership. In making the determination that the husband was the wife's agent with respect to their auto dealership business, the trial court stated the basic agency rules that (1) there must be manifestation by the principal that the agent shall act for him/her, (2) the agent must accept the agency relationship, and (3) the understanding that the principal is to be in control of the undertaking for which the agent is empowered. *Id.* at 426. The bankruptcy court expressly found that the debtor in *Smith* exercised control over her husband's business activities because she held the license for the dealership, stating, "The Court is convinced that Bob Smith was acting as Pamela K. Smith's agent at the time of the sale of the van to plaintiffs." *Id.*

The second authority for the proposition that Ilker's misconduct is visited on Mrs. Tirben is *Taylor Freezer Sales v. Oliphant, (In re Oliphant)*, 221 B.R. 506, 511 (Bankr. D. Ariz.

1998). *Oliphant* represents a similar situation in which Mrs. Oliphant engaged in conduct against her employer which resulted in a judgment for embezzlement being entered against Mrs. Oliphant and the Oliphant's marital community. In the state court proceedings the creditor introduced evidence that portions of the embezzled monies were deposited in the Oliphants' joint checking account and used by both of them. No judgment was entered against Mr. Oliphant, the debtor in the subsequent bankruptcy case. The Oliphants divorced prior to the filing of the bankruptcy case by Mr. Oliphant.

The issue presented to the bankruptcy court was a contention that the debt should be determined nondischargeable as to Mr. Oliphant's portion of the community property from their marriage. Under applicable Arizona law, the bankruptcy court determined that "a marital community" may be liable for the intentional torts of one spouse if done for the benefit of the community. Further, under Arizona law, after divorce each spouse remains liable to the creditors of the former community. The bankruptcy court concluded that a liability owed for a community obligation could be enforced against each spouses' separate property, and that absent bankruptcy the creditor could enforce the obligation personally against Mr. Oliphant as a community obligation.

At this juncture, Arizona law as described in the *Oliphant* decision and California community property law diverge. Marriage does not automatically make one spouse the agent of the other for all purposes and there is not automatic liability for all debts incurred while the persons were married. Each spouse owes a

fiduciary duty to the other in their dealings, and have the ability to enter into any transactions which either might if unmarried. Cal. Fam. Code § 721. The obligations they owe each other are of "mutual respect, fidelity, and support." Cal. Fam. Code § 720. It is the community estate (the community property) which is "liable for a debt incurred by either spouse before or during the marriage." Cal. Fam. Code § 910 *et. seq.* There is no personal liability of one spouse for the debts of the other spouse under California law. *11601 Wilshire Associates v. Grebgow*, 64 Cal. App. 4th 453, 457 (1998); *Reynolds & Reynolds Co. v. Universal Forms, Labels & Sys., Inc.*, 965 F. Supp. 1329, 1397 (C.D. Cal. 1997).

The California Legislature has created an exception to the general rule that one spouse is not personally liable for the debts of the other in California Family Code Section 914. This limited exception is for a debt incurred for necessaries of life for the person's spouse. Necessaries of life are common necessaries which include food, clothing, shelter, medical attention, and the like. *See Evans v. Noonan*, 20 Cal. App. 288 (1912). In this case the Signorello Parties do not purport to be enforcing an obligation they are owed for necessaries of life provided to Mrs. Tirben, but an alleged tort obligation Mr. Tirben incurred.

The Signorello Parties having failed to establish that Mrs. Tirben has personal liability, the summary judgment motion is denied as to both the request for personal liability and that the alleged obligation is nondischargeable.

### IMPOSITION OF A CONSTRUCTIVE TRUST

The Signorello Parties also ask for a constructive trust in the proceeds of the life insurance policy. "One who gains a thing

by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." Cal. Civ. Code § 2224. This statute has three elements: "the existence of a *res* (property or some interest in property); the plaintiff's right to that *res*; and the defendant's gain of the *res* by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act." *Kraus v. Willow Park Public Golf Course*, 73 Cal. App. 3d 354 (1977). However, "the wrongful act giving rise to a constructive trust need not amount to fraud or intentional misrepresentation. All that must be shown is that the acquisition of the property was wrongful and that the keeping of the property by the defendant would constitute unjust enrichment." *Calistoga Civic Club v. City of Calistoga*, 143 Cal. App. 3d 111, 116 (1983).

**First Element, The Existence of Property.**

In this case, the Signorello Parties have identified a specific res, the insurance proceeds.

**Second Element, The Signorello Parties' Right to the Property.**

The Signorello Parties assert a right to the life insurance proceeds contending that the premiums for the insurance policies were paid for with funds they allege to have been stolen by Mr. Tirben. As proof, the Signorello Parties offer Mr. Tirben's bank statements, which show that allegedly stolen checks were deposited in the same account that was used to pay the premiums for the life insurance. However, this account also contained funds owned by Mr. Tirben.

"Where a person has embezzled funds and used them for the payment of premiums for insurance on his life, a trust is created in favor of the person from whom they were embezzled, and that such person is entitled to such proportion of the total insurance as the amount of premiums which have been paid from the embezzled funds bears to the total amount of the premiums paid." *Brodie v. Barnes*, 56 Cal. App. 2d 315, 323 (1942). The law imposes a proportionality requirement when embezzled funds are alleged to have been used to purchase. Were the court to impose a constructive trust in favor of the Signorello Parties, it would be limited to the percentage of the premiums that were paid with stolen funds.

In their motion, reply, and at oral argument, the Signorello Parties repeatedly urge that they do not have an obligation to trace the allegedly wrongfully obtained funds to the life insurance policies. Rather, relying upon *Chrysler Credit Corp. V. Sup. Ct.*, 17 Cal. App. 4th 1303, 1312-13, and *Bank of Alex Brown v. Goldberg (In re Goldberg)*, 158 B.R. 188, 194-195 (Bankr. E.D. Cal. 1993), they contend that it is Mrs. Tirben's burden under California law to show that the insurance policies were funded solely from funds rightfully in the possession of her and her late husband. However, as the court in *Goldberg* recognized, substantive federal law requires strict tracing in some cases. *Goldberg*, 158 B.R. at 195-196. As the Ninth Circuit recognized in cases involving commingled funds, whatever presumption California law may create in relation to tracing, it cannot conflict with the federal bankruptcy scheme created by Congress. *Toys "R" Us, Inc. v. Esgro, Inc. (In re Esgro, Inc.)*, 645 F.2d 794, 797-798 (9th Cir. 1981); see also *In re Sierra Steel, Inc.*, 96 B.R. 271, 274 (B.A.P. 9th Cir. 1989).

More recently, the Ninth Circuit has been clear that the proponent of a constructive trust in a bankruptcy case involving commingled funds — even under California law constructive trust law — "bears the burden of tracing the alleged trust property 'specifically and directly' back to the illegal transfers giving rise to the trust." *Taylor Assocs. v. Diamant (In re Advent Mgmt. Corp.)*, 104 F.3d 293, 296 (9th Cir. 1997);[2] *see also Danning v. Bozek (In re Bullion Reserve of North America)*, 836 F.2d 1214, 1217 (9th Cir. 1988) (funds from commingled bank account controlled by debtor presumptively constitute property of the debtor's estate.)

The court cannot blindly assume that the premiums were paid with only the alleged embezzled monies, just as it will not assume that the premiums were paid with other monies of Mr. and Mrs. Tirben. The parties must develop a rational method to account for the monies and alleged interests in the insurance proceeds. The Signorello Parties have failed to establish this element for a constructive trust.

---

[2] "Under the strict tracing standard applicable to bankruptcy cases involving commingled funds, [person asserting the constructive trust] bears the burden of tracing the alleged trust property "specifically and directly" back to the illegal transfers giving rise to the trust. *Bank of Alex Brown v. Goldberg (In re Goldberg)*, 158 Bankr. 188, 196 (Bankr. E.D. Cal. 1993), aff'd, 168 Bankr. 382 (Bankr. 9th Cir. 1994). If [person asserting the constructive trust] fails to trace the funds, we must presume that the funds constitute "an interest of the debtor in property." *Danning v. Bozek (In re Bullion Reserve of North America)*, 836 F.2d 1214, 1217 (9th Cir. 1988) (funds from commingled bank account controlled by debtor presumptively constitute property of debtor's estate)." *Taylor Assocs. v. Diamant (In re Advent Mgmt. Corp.)*, 104 F.3d 293, 296 (9th Cir. 1997).

11

**Gaining of the Property by Wrongful Conduct**

Now, we turn to the third element. The Signorello Parties contend that Mrs. Tirben wrongfully obtained the life insurance proceeds because the life insurance policy was paid for with funds stolen from them. In attempting to show that the funds were stolen, the Signorello Parties offer several pieces of evidence.

The Signorello Parties offer the declaration of Steve Polinski. Mr. Polinski states that during Mr. Tirben's employment with the Signorello Parties, $266,245.00 went missing from the wine tasting room. This information is backed up with a copy of the Signorello Parties' accounting records. Mr. Polinski further states that Mr. Tirben was the only person responsible for collecting the cash generated by the Tasting Room. The declaration of Mr. Signorello alleges substantially the same thing. However, while the Signorello Parties were able to provide bank statements for Mr. Tirben's account, they were apparently unable to provide the bank statements for their own account. This is a key element of proof since the basis of the claim is that the POS Sale system shows cash receipts of one number but bank records show deposits of a smaller number.

Mr. Polinski also testified that upon review of the books, he found that Mr. Tirben wrote numerous checks to himself to pay off a credit card (which Mr. Polinski states does not belong to the Signorello Parties), Staples, and Costco totaling more than $272,660.32. The checks were allegedly signed by Mr. Birebent. The Declaration of Mr. Birebent states that Birebent's name was forged on "numerous" checks. Mr. Birebent also states that many of the forged checks were made out to Mr. Tirben.

Mrs. Tirben admits that many of the checks at issue were deposited into Mr. and Mrs. Tirbens' joint bank account. However, Mrs. Tirben claims in her declaration that the money was deposited into the bank account at Mr. Signorello's request and used as Mr. Signorello directed. The Signorello Parties contend that Mrs. Tirben's claim is inadmissible because it lacks foundation, is speculative, and is based on hearsay. At this juncture, Mrs. Tirben's declaration does not address how she had personal knowledge that her husband was using the money as Mr. Signorello directed.[3] Though not perfect, at issue is the reason why the monies were deposited and disbursed from the Tirben joint account.

## CONCLUSION

In a motion for summary judgement, the court's job is not to weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249. Instead, there is a genuine dispute as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the movant bears the burden of persuasion with regard to a claim (as the Signorello Parties do here), the movant "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." MOORE'S FEDERAL PRACTICE § 56.13[1]; *Edison v.*

---

[3] While the court may accept this testimony as evidence strong enough to survive a summary judgment motion, the credibility of the evidence is low. First, the court does not know how Mrs. Tirben learned of the alleged theft or directions given by Mr. Signorello. Second, a blanket statement that Mr. Tirben couldn't have stolen the money because the Tirben family received no benefit from the money is not as credible as tracing where the embezzled money actually ended up going after it was disbursed from the Tirbens' joint account.

13

*Reliable Life Ins. Co.*, 664 F.2d 1130, 1131 (9th Cir. 1981). The Signorello Parties have failed to present such uncontroverted evidence. They have not met their burden of tracing the alleged stolen monies to the payment of the insurance premiums. Nor have they proven that Mrs. Tirben has any personal liability for the alleged obligation of Mr. Tirben. Viewing the evidence in the light most favorable to Mrs. Tirben, it is possible that a reasonable jury could find in her favor as to these facts. The Motion for Summary Judgment is denied.

## UNDISPUTED FACTS

In denying a motion for summary judgment, the court may determine which facts are not genuinely in dispute and enter an order determining such facts in the case. The following facts are determined not to be genuinely in dispute in this adversary proceeding and pursuant to Fed. R. Civ. P. 56(g) and Fed. R. Bankr. P. 7056, and established in this adversary proceeding:

1. The Signorello Parties are all involved in the wine business and operate, among other things, a Winery in Napa, California, called Signorello Estate.

2. On April 25, 2005, the Winery hired Saki Ilker Tirben as Controller, and Ilker remained as the Winery's Controller until September 15, 2009.

3. As Controller, Ilker managed the Signorello Parties' accounts and accounting software.

4. As Controller, Ilker's salary was between $40,000.00 and $48,000.00 a year.

5. On September 10, 2009, the Signorello Parties hired Steven Polinski to replace Ilker.

6.  Ilker committed suicide in January 2010 while the authorities were attempting to execute a search warrant on his home.

7.  Helen Tirben was married to Ilker.

8.  The Winery operates a tasting room in Napa, California ("Tasting Room") that sells various goods and services.

9.  There is a computer in the Tasting Room that tracks, among other things, cash sales (the POS Computer).

10. Approximately every two or three days, the employees in the Tasting Room collect the accumulated cash from sales and sign out that cash to an employee to be deposited into the Signorello Parties' bank account.

11. Ilker was responsible for "checking out" cash for deposit in the Signorello Parties' bank account, but it is disputed that Ilker was the only one who could check out the cash from the Tasting Room.

12. Some of the 17 checks totaling $51,559.56 were deposited into Mrs. Tirben's and Ilker's joint bank account.

13. Some of the 34 checks totaling $129,148.65 were deposited into Mrs. Tirben's and Ilker's joint back account.

14. Some of the 15 checks totaling $22,982.00 were deposited into Mrs. Tirben's and Ilker's joint bank account.

15. Some of the 149 checks totaling $63,332.40 were deposited into Mrs. Tirben's and Ilker's joint bank accounts, used to pay for goods at Costco, or to pay personal credit card obligations.

16. Some of the 9 checks totaling $3,568.29 were deposited into Mrs. Tirben's and Ilker's joint bank accounts, or used to pay the personal credit card obligations.

17. On May 25, 2010, Mrs. Tirben initiated this adversary proceeding to recover the $500,000.00 proceeds from two life insurance policies held by Ilker. These policies are held by Life Investors Insurance Company of America. The proceeds have been, pursuant to stipulation, deposited with the court pending resolution of this adversary action.

18. The two life insurance policies are identified as (i) Life Investors issued policy no. xxxxxx716 on February 1, 2005, in the amount of $200,000.00, and (ii) Life Investors policy no. xxxxxx167 on June 16, 2004, and that policy is worth $300,000.00.

19. Ilker deposited many of the checks into the Tirben's joint bank account at Bank of the West with account number xxxxxx655.

20. The monies in account number xxxxxx655 were used to pay the premiums on the life insurance policies for which the proceeds are at issue in this case.

The court shall enter an order determining these 20 facts in this Adversary Proceeding.

This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, and Fed. R. Bankr. P. 9014 and 7052. The court shall issue a separate order consistent with this ruling.

Dated: April 15, 2011

_____
RONALD H. SARGIS, Judge
United States Bankruptcy Court

**CERTIFICATE OF MAILING**

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that the attached document(s) was served by mail to the following entities listed at the address(es) shown below:

Service List:

Chris Kuhner
1999 Harrison St #2675
Oakland, CA 94612-3525

Carl Grumer
11355 W Olympic Blvd
Los Angeles, CA 90064

Michael Noble
2017 5th St
Sacramento, CA 95818

Helen Tirben
4431 Meadow Valley Cir
Fairfield, CA 94534

Lawrence Loheit
PO Box 1858
Sacramento, CA 95812-1858

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

DATE: 4/18/11

_____
Deputy Clerk