(21)

FILED

DEC 22 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re | ) Case No. 10-29356-E-13 |
| HELEN B. TIRBEN, | ) |
| Debtor(s). | ) |
| _____ | ) |
| HELEN B. TIRBEN, | ) Adv. Pro. No. 10-2299 |
| Plaintiff(s), | ) |
| v. | ) |
| RAYMOND SIGNORELLO, et al., | ) |
| Defendant(s). | ) |
| _____ | ) |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM OPINION AND DECISION

This Adversary Proceeding was commenced by Helen Tirben, the Plaintiff-Debtor, on May 25, 2010, in which she asserted the right to pre-petition insurance proceeds from two life insurance policies issued by Life Investors Insurance Company of America, dba Transamerica ("Life Insurance Proceeds"). The Complaint asserts that jurisdiction exists pursuant to 28 U.S.C. §§1334(a) and 157(a)

as a matter arising out of and related to her Chapter 13 bankruptcy case, and that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) for turnover of property of the Estate.    The Complaint asserts a superior interest in and right to the Life Insurance Proceeds over those claimed by Raymond Signorello, Northern Empire, LLC, Fuse Wines, LP, and Fuse Wines, LLC ("Signorello Parties").  Transamerica Life Insurance Company, named as Life Investors Insurance Company of America filed an answer, coupled with a counterclaim and cross-claim to interplead the Life Insurance Proceeds.    The Life Insurance Proceeds have been deposited with the Clerk of the Court and Transamerica Life Insurance Company dismissed from this adversary proceeding.

The Signorello Parties filed an answer to the Complaint asserting that they deny the allegations in the Complaint that the Plaintiff-Debtor has the superior right to the pre-petition Life Insurance Proceeds.  In the Answer, the Signorello Parties admit that the Plaintiff-Debtor is the Debtor in her Chapter 13 case and that jurisdiction exists in this bankruptcy court for the Compliant pursuant to 28 U.S.C. §§ 1334(a) and 157(a) as a matter arising out of and related to her Chapter 13 bankruptcy case, and that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

The Signorello Parties also filed a Counterclaim against the Plaintiff-Debtor asserting a claim in the amount of $600,000.00 against the Plaintiff-Debtor and that such obligation was non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) for fraud, § 523(a)(4) for conversion or embezzlement, and § 523(a)(6) for breach of fiduciary duty, further requested that this court impose a constructive trust in favor of the Signorello Parties for the

Life Insurance Proceeds.

The Adversary Proceeding is one in which the claims arise under or arise in the bankruptcy case for which jurisdiction exists in this bankruptcy court and constitute core proceedings. 28 U.S.C. § 1334(e)(1) and § 157(b)(2)(A), (E), (I) and (O). Additionally, both parties have affirmatively sought the jurisdiction of this bankruptcy court to assert their respective rights and interests, as well as the Signorello Parties seeking the imposition of a constructive trust by this bankruptcy court. To the extent that any matters are related to proceedings and not core proceedings, both parties have consented to and sought from this bankruptcy court a judgment in this Adversary Proceeding. The bankruptcy judge shall issue the ruling on this matter and enter the judgment in this Adversary Proceeding.

### BIFURCATION OF TRIAL

Trial in this Adversary Proceeding was bifurcated, with the first phase being conducted on the Counterclaim for the imposition of the constructive trust. The parties determined, and the court concurred, that resolution of the constructive trust issue could result in substantially reducing issues to be determined on the other claims raised in this Adversary Proceeding. This ruling addresses the issue of whether a constructive trust is imposed by the court and makes findings of facts and conclusions of law applicable to all matters in this Adversary Proceeding.

### SUMMARY OF CASE

This Adversary Proceeding arises out of an unfortunate set of personal and financial events involving the Plaintiff-Debtor, Signorello Parties, and Sakir Ilker Tirben ("Ilker"), the

Plaintiff-Debtor's late husband and former employee of the Signorello Parties. Prior to the commencement of the bankruptcy case, Ilker was employed by one or more of the Signorello Parties as the controller for their business enterprise. It is alleged that during his employment Ilker took monies from the Signorello Parties, through unauthorized checks and cash, in excess of $600,000.00. Prior to the commencement of this bankruptcy case Ilker was terminated from his employment as the Controller for the Signorello Parties and an investigation of his conduct was undertaken by the Signorello Parties and local law enforcement authorities. On January 14, 2010, Ilker died of a self-inflicted gunshot wound, and $500,000.00 of Life Insurance Proceeds on the two Life Insurance Policies was then payable.

The Signorello Parties allege that the monies improperly taken from them were used to pay for the Life Insurance Policies, that a constructive trust in their favor should be imposed, and they have a superior right to the Life Insurance Proceeds over the Plaintiff-Debtor. The Plaintiff-Debtor asserts that as the pre-petition beneficiary on the policy, she is entitled to the Life Insurance Proceeds and that such proceeds are property of the Estate in which she asserts an exemption.[1]

**FACTS ESTABLISHED IN THIS ADVERSARY PROCEEDING**

Through the diligent efforts of the parties, the court made a summary determination of the following facts which are not in dispute and are determined to be established in this Adversary Proceeding pursuant to Fed. R. Civ. P. 56(g) and Fed. R. Bankr. P.

---

[1] Determination of the issue of any exemption to which the Plaintiff-Debtor may be entitled and the amount of any such exemption has been stayed pending completion of this Adversary Proceeding.

7056:

1. The Signorello Parties are all involved in the wine business and operate, among other things, a Winery in Napa, California, called Signorello Estate.

2. On April 25, 2005, the Winery hired Saki Ilker Tirben as Controller, and Ilker remained as the Winery's Controller until September 15, 2009.

3. As Controller, Ilker managed the Signorello Parties' accounts and accounting software.

4. As Controller, Ilker's salary was between $40,000.00 and $48,000.00 a year.

5. On September 10, 2009, the Signorello Parties hired Steven Polinski to replace Ilker.

6. Ilker committed suicide in January 2010 while the authorities were attempting to execute a search warrant on his home.

7. Helen Tirben was married to Ilker.

8. The Winery operates a tasting room in Napa, California ("Tasting Room") that sells various goods and services.

9. There is a computer in the Tasting Room that tracks, among other things, cash sales (the POS Computer).

10. Approximately every two or three days, the employees in the Tasting Room collect the accumulated cash from sales and sign out that cash to an employee to be deposited into the Signorello Parties' bank account.

11. Ilker was responsible for "checking out" cash for deposit in the Signorello Parties' bank account, but it is disputed that Ilker was the only one who could check out the cash from the Tasting Room.

12. Some of the 17 checks totaling $51,559.56 were deposited into Plaintiff-Debtor and Ilker's joint pre-petition bank account.

13. Some of the 34 checks totaling $129,148.65 were deposited into Plaintiff-Debtor and Ilker's joint pre-petition back account.

14. Some of the 15 checks totaling $22,982.00 were deposited into Plaintiff-Debtor and Ilker's joint pre-petition bank account.

15. Some of the 149 checks totaling $63,332.40 were deposited into Plaintiff-Debtor and Ilker's joint pre-petition bank accounts, used to pay for goods at Costco, or to pay personal credit card obligations.

16. Some of the 9 checks totaling $3,568.29 were deposited into Plaintiff-Debtor and Ilker's joint pre-petition bank accounts, or used to pay the personal credit card obligations.

17. On May 25, 2010, Plaintiff-Debtor initiated this adversary proceeding to recover the $500,000.00 proceeds from two life insurance policies held by Ilker. These policies are held by Life Investors Insurance Company of America. The proceeds have been, pursuant to stipulation, deposited with the court pending resolution of this adversary action.

18. The two life insurance policies are identified as (i) Life Investors issued policy no. xxxxxx716 on February 1, 2005, in the amount of $200,000.00, and (ii) Life Investors policy no. xxxxxx167 on June 16, 2004, and that policy is worth $300,000.00.

19. Ilker deposited many of the checks into the joint pre-petition bank account at Bank of the West with account number xxxxxx655 of the Plaintiff-Debtor and Ilker.

20. The monies in account number xxxxxx655 were used to pay the premiums on the life insurance policies for which the proceeds are at issue in this case.

Order on Motion for Summary Judgment, Dckt. 204.

In addition to the material facts established by the court under Fed. R. Civ. P. 56(g) additional testimony was presented at trial concerning how the alleged improperly taken monies at issue are "traceable" to the Life Insurance Polices. Additional evidence was presented on the issue of whether monies deposited in the Tirben's joint bank accounts were not authorized by the Signorello Parties, whether any of all of the payments and disbursements made by Ilker were authorized by the Signorello Parties, and whether the Signorello Parties had knowledge of and directed all of the disbursements of monies by Ilker through the pre-petition joint bank account.

There is no dispute between the parties that monies above the salary paid to Ilker were transferred from the Winery to the pre-petition joint bank account maintained by Plaintiff-Debtor and Ilker. During his life, Ilker maintained this account and the court finds that Plaintiff-Debtor was not involved in or aware of the nature of the monies deposited in the account alleged to having been improper or unauthorized by the Signorello Parties. Plaintiff-Debtor provided testimony of having observed Ilker making purchases for the Winery and its employees. These identified purchases were of a limited nature. A significant part of her testimony was based upon her observations of Ilker, statements made to her by her late husband, and her opinions of the management style and business ethics of Raymond Signorello.

The Signorello parties presented evidence that none of the monies transferred into the joint pre-petition account maintained by the Plaintiff-Debtor and Ilker were authorized and that the Signorello Parties were unaware of checks and monies taken by Ilker until well after the fact. When they became suspicious that not all monies had been properly accounted for by Ilker, the Signorello Parties began reviewing the matter, terminated Ilker as the controller, and then sought an investigation of the situation by the local law enforcement agency.

In addition to Ilker's income of $40,000.00 to $48,000.00 a year, Plaintiff-Debtor also earned approximately $36,000.00 a year from her employment, with both incomes being deposited into the pre-petition joint bank account. These monies were commingled with the monies from the Signorello Parties which were deposited into the pre-petition joint bank account. Neither the Plaintiff-Debtor

nor the Signorello Parties were able to identify which commingled monies were used to pay the expenses of the Plaintiff-Debtor's family and which were used to pay the Life Insurance Premiums.

## CREATION OF CONSTRUCTIVE TRUST

"One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." Cal. Civ. Code § 2224. This statute has three elements: "the existence of a *res* (property or some interest in property); the plaintiff's right to that *res*; and the defendant's gain of the *res* by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act." *Kraus v. Willow Park Public Golf Course*, 73 Cal. App. 3d 354 (1st App. Dist. 1977). However, "the wrongful act giving rise to a constructive trust need not amount to fraud or intentional misrepresentation. All that must be shown is that the acquisition of the property was wrongful and that the keeping of the property by the defendant would constitute unjust enrichment." *Calistoga Civic Club v. City of Calistoga*, 143 Cal. App. 3d 111, 116 (1st App. Dist. 1983).

The real fight in this adversary proceeding is over who has the burden of tracing the monies used to pay the Life Insurance Premiums. The Signorello Parties assert that it is the Plaintiff-Debtor's burden to show that monies other than those alleged to have been wrongfully taken from the Winery were used to pay the premiums. In addition to arguing that none of the monies were wrongfully taken, the Plaintiff-Debtor asserts that it is the

8

Signorello Parties who must establish that the alleged wrongfully taken monies were used to pay the insurance proceeds.

Relying upon *Chrysler Credit Corp. v. Sup. Ct.*, 17 Cal. App. 4th 1303, 1312-13 (1st App. Dist. 1993), and *Bank of Alex Brown v. Goldberg (In re Goldberg)*, 158 B.R. 188, 194-195 (Bankr. E.D. Cal. 1993), the Signorello Parties contend that it is Plaintiff-Debtor's burden under California law to show that the insurance policies were funded solely from funds rightfully in the possession of her and her late husband. However, as the court in *Bank of Alex Brown v. Goldberg* recognized, substantive federal law requires strict tracing in some cases. *Bank of Alex Brown v. Goldberg*, 158 B.R. at 195-196.

In *Chrysler Credit Corp v. Sup. Ct.*, the issue addressed by the court related to a creditor's post-petition security interest in property of the estate and the failure of the debtor in possession, the fiduciary of the estate prior to the trustee being appointed, in handling property of the estate. Such is not the situation before this court in which the burden of tracing goes to the pre-petition conduct of Ilker, the Plaintiff-Debtor (not as a representative of the bankruptcy estate) and the Signorello Parties. In *Bank of Alex Brown v. Goldberg*, the court concluded that a more liberal tracing requirement for the creditor seeking to invoke the constructive trust was warranted in that case on several unique grounds. First, the court stated that a constructive trust is imposed based on equity to prevent unjust enrichment. Rather than applying the strict tracing rules otherwise required for fairness to all creditors, the *Bank of Alex Brown v. Goldberg* court concluded that applying the constructive trust would work to

9

benefit all creditors.  The constructive trust would defeat that
debtor's claim of an exemption, but the constructive trust rights
had not been perfected prior to the commencement of the bankruptcy
case, thereby being subject to the avoiding powers under 11 U.S.C.
§ 544 to recover the value for all of the creditors.  *Id.*, p. 197.

As the Ninth Circuit Court of Appeals recognized in cases
involving commingled funds, whatever presumption California law may
create in relation to tracing, it cannot conflict with the federal
bankruptcy scheme created by Congress. *Toys "R" Us, Inc. v. Esgro,
Inc. (In re Esgro, Inc.)*, 645 F.2d 794, 797-798 (9th Cir. 1981);
*see also In re Sierra Steel, Inc.*, 96 B.R. 271, 274 (B.A.P. 9th
Cir. 1989).  More recently, the Ninth Circuit has been clear that
the proponent of a constructive trust in a bankruptcy case
involving commingled funds — even under California constructive
trust law — "bears the burden of tracing the alleged trust property
'specifically and directly' back to the illegal transfers giving
rise to the trust." *Taylor Assocs. v. Diamant (In re Advent Mgmt.
Corp.)*, 104 F.3d 293, 296 (9th Cir. 1997);[2] *see also Danning v.
Bozek (In re Bullion Reserve of North America)*, 836 F.2d 1214, 1217
(9th Cir. 1988) (funds from commingled bank account controlled by
debtor presumptively constitute property of the debtor's estate.)

---

[2] "Under the strict tracing standard applicable to bankruptcy
cases involving commingled funds, [person asserting the constructive
trust] bears the burden of tracing the alleged trust property
"specifically and directly" back to the illegal transfers giving rise
to the trust. *Bank of Alex Brown v. Goldberg (In re Goldberg)*, 158
*Bankr. 188, 196 (Bankr. E.D. Cal. 1993), aff'd, 168 Bankr. 382 (Bankr.
9th Cir. 1994)*. If [person asserting the constructive trust] fails to
trace the funds, we must presume that the funds constitute "an
interest of the debtor in property." *Danning v. Bozek (In re Bullion
Reserve of North America)*, 836 F.2d 1214, 1217 (9th Cir. 1988) (funds
from commingled bank account controlled by debtor presumptively
constitute property of debtor's estate)." *Taylor Assocs. v. Diamant
(In re Advent Mgmt. Corp.)*, 104 F.3d 293, 296 (9th Cir. 1997).

Interestingly, the Ninth Circuit Court of Appeals in *Taylor* cites *In re Goldberg* for the requirement that the party attempting to assert the constructive trust is put to a strict tracing standard. Clearly, the holding in *Goldberg* was based on a unique set of facts as determined by that judge.

The evidence presented to the court is clear, neither party can trace what monies were used to pay the insurance premiums which totaled $173.25 a month. Premium payments of $102.55 a month commenced on Life Insurance Policy xxxx167 in June 2004, and payment of $70.70 a month commenced on Life Insurance Policy xxxx7716 in February 2005. It is asserted by the Signorello Parties that the improper taking of money by Ilker started in December of 2007 and continued through August of 2009 (with Ilker being terminated in September of 2009). As of September 11, 2009, Bank of the West Account xxxx655 had an ending balance of only $3,620.35. During the period of the alleged improper transfers exceeding $500,000.00, a total of $3,811.50 in Life Insurance Premiums was paid.

There is no evidence before the court that after September 2009 and until Ikler's death in 2010, that premiums continued to be paid from any improperly taken monies from the Signorello Parties. If the Plaintiff-Debtor had not continued to pay the premiums, then the policies would have lapsed and there would not be Life Insurance Proceeds for the parties to fight over.

With respect to the tracing issue, the Signorello Parties offered Jeff Mallan as a rebuttal witness to testify that the Plaintiff-Debtor could not trace the monies used to pay the insurance premiums to the alleged improper payments. Mr. Mallan's

11

testimony was consistent with that of the Plaintiff-Debtor, and he too could not trace any specific monies to the payments of life insurance premiums.    In his testimony, while Mr. Mallan could identify three examples of monies from the Signorello Parties into the joint pre-petition account, he admitted that he could not trace the use of such monies.

### IMPOSITION OF A CONSTRUCTIVE TRUST ON A PROPORTIONATE AMOUNT OF THE INSURANCE PROCEEDS

To stop the analysis at this point would result in the court denying the request for imposing a constructive trust.    But to do so would ignore the equitable underpinnings of a constructive trust – preventing unjust enrichment at the expense of another. *Lazar v. Hertz Corp.*, 143 Cal.App. 3d 128, 139 (1986).    The person seeking the constructive trust must have a better right to the property than the person who has the asset at issue.

The evidence presented to the court shows a significant amount of money being transferred to Ilker from the Signorello Parties, which they allege was unauthorized.    There is conflicting testimony from the Plaintiff-Debtor attesting to the Plaintiff-Debtor and Ilker not having access to monies in the amounts that are alleged to have been improperly taken.    The consideration of this issue is made even more complex by the one person who knows what occurred, Ilker, being unable to testify.    The court is persuaded that given the magnitude of the transfers and testimony presented by the Signorello Parties (though characterized as self serving, all party testimony is self serving, as has been the Plaintiff-Debtor's) that unauthorized transfers occurred.

Based on the testimony presented, the court also concludes

12

that the Plaintiff-Debtor was not a party to any of the alleged unauthorized transfers, was ignorant that any transfers were unauthorized, and was not a party or participant in any such unauthorized transfers by Ilker.  To the extent that monies from the unauthorized transfers were use to pay the Insurance Premiums, the Plaintiff-Debtor is the innocent recipient of the Life Insurance Proceeds.  However, merely being an innocent recipient does not preclude the imposition of a constructive trust.

The court in *Bank of Alex Brown v. Goldberg* presents an example of proper consideration of the facts, circumstances, and the law in the court exercising its equitable powers.  A constructive trust is not punitive in nature, but intended to deliver property to the rightful owner.  The court in *Brodie v. Barnes*, 56 Cal. App. 2d 315, 323 (1st App. Dist. 1942), imposed a constructive trust on that portion of the Life Insurance Proceeds which was the same percentage as the premium paid with improperly diverted monies to the total amount of premium payments.  Though neither the Plaintiff-Debtor nor the Signorello Parties could identify the source of any payments (other than the Plaintiff-Debtor for periods prior to alleged unauthorized transfers), each side has presented the court with the monies which they allege existed for the joint pre-petition bank account maintained by Plaintiff-Debtor and Ilker.

The Signorello Parties have presented the court with evidence that there has been $508,919.12 in cash and checks either missing or transferred into the joint pre-petition bank account during Ilker's time as Controller.  These amounts are set out in the direct testimony statement of Raymond Signorello.

13

Though none of the monies can be traced directly to being used to make the Insurance Premium Payments, the monies were in the account from which the payments were made to the insurance company. Conversely, the Plaintiff-Debtor has introduced evidence of the earnings of Ilker and the Plaintiff-Debtor being deposited in the account. The gross annual income for the two was $81,000.00. The Plaintiff-Debtor also testified various other monies being transferred into the joint pre-petition bank account. From the testimony, the court finds that the transfers of $25,000.00 (portion of annuity proceeds) are additional monies deposited into the pre-petition joint account from which the insurance premiums could be paid. Though the Plaintiff-Debtor testified to additional monies being transferred from other accounts and sources, the court rejects including them as they may well represent a double counting of the alleged improper disbursements.

The Signorello Parties assert that the alleged improper transfers of money began in June 2005 and continued through September 2009 (five years and three months). Reducing the gross income of $81,000.00 by 15% for taxes and other deductions,[3] the court projects the Plaintiff-Debtor and Ilker having $68,850.00 a year to deposit into the account. For the five year, three month period, that would be $361,462.00 to be deposited into the joint pre-petition account. The additional amounts testified to by the Plaintiff-Debtor total an additional $25,000.00 deposits into the pre-petition joint account, for a total of $386,462.00.

Based solely on the monies which were otherwise available to

---

[3] The court not having been provided with the actual net income numbers, the 15% adjustment is deemed to be sufficient in making this equitable determination.

the Plaintiff-Debtor and Ilker during this period and the alleged
improperly diverted monies, the $508,919.12 of alleged improperly
diverted monies are 59% of the total monies.  If the court assumes
that when Ilker made the insurance premium payment a portion of the
payment came from the alleged improperly transferred monies and a
portion from other monies, then 59% of each insurance premium would
be from the alleged improperly transferred monies.

In considering the total number of premium payments made, for
Life Insurance Policy xxxx167 ($300,000.00) there were a total of
66 premium payments (of which 62 during the period of the alleged
improper diversions were made) and for Life Insurance Policy
xxxx7716 ($200,000.00) there were a total of 46 premium payments
(of which 42 were made during the period of the alleged improper
diversions).  Based solely on the number of payments, 93% of the
payments were made when 59% of the total monies were the alleged
improper disbursements by Ilker.  Assuming that the alleged
improperly diverted money was used in the same percentage as it
bears to the total monies (59%), then 55% of the insurance premiums
could be identified to the improperly diverted monies.

In coming to the decision in this case, the court is not
persuaded by the community property law cases cited by the
Signorello Parties for the proposition that only the last term of
the policy should be considered in this case.  The Signorello
Parties argue that since in community property division cases state
courts have treated term life insurance policies as being valuable
economic creatures only for the then current term, then the court
consideration should only take into account the payments during the
last term of each policy.  *See Generosa v. Havins*, 43 Cal.App.4th

414 (1996), and *Marriage of Spengler*, 5 Cal.App.4th 288 (1992). These cases deal with the unique area of community property law and the presumption of ownership which arise in determining whether something is separate or community property.    For community property purposes a term life insurance policy is given no value for purposes of the dissolution of the marriage.    To accept this interpretation, then the Life Insurance Policies at issue would have no value during the period in which the alleged improper transfers occurred and the constructive trust is valueless.

Additionally, a last premium payment term analysis may not change the equation positively for the Signorello Parties.    The court does not accept Jeffrey Mallan's contention that at all times during the last term of the life insurance polices the premiums had to be paid from the alleged unauthorized transfers.    He comes to this conclusion by assuming that all other expenses had to be paid from the Plaintiff-Debtor's and Ilker's other funds.    This is fundamentally wrong when there are commingled funds and the Signorello Parties cannot trace the monies.[4]

Though Mr. Mallan was not a witness for the Signorello Parties in their case in chief and his testimony was limited to that as a rebuttal witness to the Plaintiff-Debtor's testimony, one of the exhibits submitted by the Signorello Parties shows the flaw in his contention.  Exhibit 137 is his report, which was not admitted into evidence.  Exhibits 3.1 through 3.12 are summaries of the deposits into the joint pre-petition account and the alleged amount of

---

[4]  Jeffrey A. Mallan was not allowed to testify as a witness for the Signorello parties due to their failure to disclose him as a witness and properly file his direct testimony statement.  His testimony is limited to that as a rebuttal witness.

16

unauthorized disbursements. Using Mr. Mallan's figures, during the twelve-month period of February 2009 through January 2010, there was $252,470.00 deposited into the joint pre-petition account from which the insurance premiums were made by Ilker and/or the Plaintiff-Debtor. Of this, Mr. Mallan's data states that $66,498.00 is alleged to be unauthorized disbursements and $185,972.00 is other monies of the Plaintiff-Debtor and Ilker. To fashion a ruling based on this data, the court would conclude that only 26% of the Insurance Premiums were paid from the alleged unauthorized disbursements. The court rejects such a computation based only on the last 12 months of the insurance policies.

The court finds that a constructive trust is created on 57% of the $500,000.00 in insurance proceeds ($285,000). Due to the evidence presented to the court, a strict mathematical computation of the constructive trust cannot be made, and this proportional amount takes into account the monies diverted, the monies which belonged to the Plaintiff-Debtor and Ilker in the joint pre-petition account, and the equities of the situation. Neither party can provide the court with a definitive accounting as to what occurred, both point to the late Ilker as the person who had personal knowledge of what occurred

As discussed by the Court in *Bank of Alex Brown v. Goldman*, the creditor seeking to assert the constructive trust must be able to trace the diverted funds at issue to the asset in which it wants to enforce the constructive trust. As further stated in *Bank of Alex Brown v. Goldman*, the standard for the tracing is considered in light of the equitable purposes of a constructive trust. In this case, the Signorello Parties have sufficiently traced monies

17

from the Signorello Parties to Ilker which were not authorized to be paid to him.   While the Plaintiff-Debtor testifies that she believes that any money Ilker received was authorized and used as directed by the Signorello Parties, her beliefs and evidence do not sufficiently counter the testimony and evidence of the Signorello Parties on this point.

The unauthorized transfered monies were commingled with the monies of the Plaintiff-Debtor and Ilker, and neither party can definitively state which dollars were used to pay the Insurance Premiums and which dollars were used to pay other expenses for the Plaintiff-Debtor and Ilker.  While the Plaintiff-Debtor points her finger at the Signorello Parties asserting that they cannot prove what dollars were used with exact specificity, such cannot be done because Ilker commingled the monies with funds of the Plaintiff-Debtor and Ilker.

Conversely, because the premium amount is so small, the Signorello Parties are unable to show that the Insurance Premiums had to be paid from the unauthorized transfers.   No basis has been shown for the Signorello Parties being entitled to a presumption that only unauthorized transfer monies were used to pay the Insurance Premiums.   Rather, it is most logical that some of the premiums were paid with unauthorized transfer monies and some were paid with monies of the Plaintiff-Debtor and Ilker.   Given the commingling of monies by Ilker, the logical and equitable manner to allocate those payments is on a proportionally based on the total funds available to pay the Insurance Premiums.

///

///

**Elements of Constructive Trust Established**

In this Adversary Proceeding the Signorello Parties have identified a specific *res*, the $500,000.00 insurance proceeds which have been paid by Transamerica Life Insurance Company upon the death of Ilker. By establishing that $508,919.12 in monies were disbursed without authorization to Ilker, and deposited into bank accounts maintained by Ilker individually and jointly with the Plaintiff-Debtor, the Signorello Parties have traced the unauthorized disbursement to the Plaintiff-Debtor's bank account. These monies were used, in conjunction with monies of Ilker and the Plaintiff-Debtor to make the Life Insurance Premium payments for the two Life Insurance Policies. The Signorello Parties have traced the commingled funds having been used to make the Life Insurance Premium Payments and that 57% of the monies used to pay the premiums was made with the unauthorized disbursements. Finally, the Signorello Parties have sufficiently established that Ilker wrongfully obtained the monies which were used to pay 57% of the Life Insurance Premium Payments. Though based on the evidence presented the court concludes that Plaintiff-Debtor did not engage in or was aware of the wrongdoing by Ilker in obtaining the unauthorized disbursements from the Signorello Parties, imposition of a constructive trust does not require the wrongdoing of an innocent person who comes into possession of the property which is subject to the constructive trust. It is sufficient to show that Ilker wrongfully obtained the monies used to pay the insurance premiums, which renders the proceeds of the Life Insurance Polices subject to a constructive trust to prevent the unjust enrichment of the Plaintiff-Debtor due to the wrongdoing.

1       In this case, by the proportionate application of the
2  constructive trust to 57% of the Life Insurance Proceeds, the
3  Plaintiff-Debtor's rights and interests as a non-wrongdoer are
4  protected for the non-Signorello Parties monies which was in the
5  joint pre-petition bank account.

6                                **RULING**

7       Based upon the forgoing, the court finds and determines that
8  the Signorello Parties have established that a constructive trust
9  exists in their favor in 57% of the $500,000.00 of Life Insurance
10  Proceeds, and the court shall enter a judgment for the imposition
11  of a constructive trust in the amount of $285,000.00 against the
12  Life Insurance Proceeds completion of the Adversary Proceeding.

13       This Memorandum Opinion and Decision constitutes the court's
14  findings of fact and conclusions of law pursuant to Fed. R. Civ. P.
15  52 and Fed. R. Bank. P. 7052.

16  Dated: December 22 , 2011

18                          RONALD H. SARGIS, Judge
19                          United States Bankruptcy Court

This document does not constitute a certificate of service.  The parties listed below will be served
a separate copy of the attached document(s).

Michael Noble
2017 5th St
Sacramento, CA 95818

Helen Tirben
4431 Meadow Valley Cir
Fairfield, CA 94534

Carl Grumer
11355 W Olympic Blvd
Los Angeles, CA 90064

Chris Kuhner
1999 Harrison St #2675
Oakland, CA 94612-3525

John Heffner
809 Coombs St.
Napa, CA 94559

David Cusick
PO Box 1858
Sacramento, CA 95812-1858

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814